**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

**RILEY PAIGE REEDS**,
an individual,                                              Hon.
Plaintiff,                                                  Case No.

v.

**SEPHORA USA INC.**
A Domestic Profit Corporation
Defendants

| | |
|---|---|
| **AVANTI LAW GROUP, PLLC**<br>Robert Anthony Alvarez (P66954)<br>Victor M. Jimenez Jr (P85194)<br>Attorneys for Plaintiff<br>600 28th St. SW<br>Wyoming, MI 49509<br>(616) 257-6807<br>ralvarez@avantilaw.com<br>vjimenez@avantilaw.com | |

**RELATED CASE**

Plaintiff is also pursuing a separate wage-and-hour action against Sephora USA, Inc. and

others in this District, captioned _Riley Paige Reeds v. Sephora USA, Inc., et al., Case No._

_1:25-cv-01207-JMB-SJB_. That action asserts wage-and-hour claims under the FLSA and

Michigan wage law. This action asserts disability-discrimination and failure-to-accommodate

claims under the Americans with Disabilities Act and the Michigan Persons with Disabilities

Civil Rights Act, and a disability retaliation claim under the Michigan Persons with Disabilities

Civil Rights Act. Plaintiff does not assert FLSA or Michigan wage claims in this action. The

claims asserted here required administrative exhaustion and could not have been brought at the

time the wage action was filed, because the Equal Employment Opportunity Commission did not

issue Plaintiff's Notice of Right to Sue until April 9, 2026. These claims arise from different operative facts and different legal theories than the wage action.

## COMPLAINT AND JURY DEMAND

Plaintiff Riley Paige Reeds, by and through counsel, states as follows:

### PARTIES

1. Plaintiff Riley Paige Reeds is an individual who resided in Michigan during the events described below.

2. Defendant Sephora USA, Inc. is an employer within the meaning of the Americans with Disabilities Act and the Michigan Persons with Disabilities Civil Rights Act, and employed Plaintiff at the Sephora location at 3700 Rivertown Pkwy #1058, Grandville, Michigan 49418.

3. Defendant Sephora employed Plaintiff from approximately June 3, 2023 through October 24, 2024.

4. Plaintiff held the position of Sales and Service Leader.

5. Plaintiff's duties included supporting team coordinators and licensed beauty advisors, overseeing retail sales and services operations, managing customer experience initiatives, assisting with event planning and marketing efforts, and performing other duties as assigned.

### JURISDICTION AND VENUE

6. This action arises under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

7. This Court has federal-question jurisdiction under 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over Plaintiff's related Michigan Persons with Disabilities Civil Rights Act claims under 28 U.S.C. § 1367 because those claims arise from the same case or controversy.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in Grandville, Kent County, Michigan, within the Western District of Michigan.

## ADMINISTRATIVE EXHAUSTION

10. Plaintiff filed a Charge of Discrimination with the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission against Sephora USA, Inc.

11. The charge was assigned MDCR No. 647781 and EEOC No. 23A-2024-01455.

12. Plaintiff's charge alleged disability discrimination based on: other terms and conditions of employment on or about May 30, 2024; discipline on or about June 18, 2024; and failure to accommodate a disability on or about July 31, 2024.

13. Plaintiff's charge identified disability as the basis for each allegation and invoked the Americans with Disabilities Act and the Michigan Persons with Disabilities Civil Rights Act.

14. Plaintiff's charge identified July 31, 2024 as the date of the most recent or continuing discrimination.

15. The disability-discrimination and failure-to-accommodate claims asserted in this Complaint were presented in, and are within the scope of, Plaintiff's charge.

16. The Michigan Department of Civil Rights dismissed the administrative complaint on January 8, 2026, after Plaintiff submitted a written request for withdrawal indicating that the matter would be pursued in court.

17. The EEOC issued a Notice of Right to Sue on April 9, 2026.

18. This action is filed within 90 days of Plaintiff's receipt of the EEOC Notice of Right to Sue.

19. Plaintiff's Michigan Persons with Disabilities Civil Rights Act claims do not require administrative exhaustion and are properly brought directly in this Court.

**FACTUAL BACKGROUND**

20. Plaintiff began working for Sephora on or about June 3, 2023.

21. Plaintiff worked as a Sales and Service Leader at Sephora's Grandville, Michigan location.

22. Plaintiff's duties included supporting team coordinators and licensed beauty advisors, overseeing retail sales and services operations, managing customer experience initiatives, assisting with event planning and marketing efforts, and performing other duties as assigned.

23. On or about December 26, 2023, Sephora issued Plaintiff a Performance Counseling Form.

24. The Performance Counseling Form identified Plaintiff's position as Sales and Service Lead and identified the store as Grand Rapids/548.

25. On or about December 27, 2023, Plaintiff recorded a statement describing concerns about retaliation, management hostility, lack of support, ADHD-related focus needs, and prior complaints to management.

26. On or about May 15, 2024, Sephora Employee Relations Manager Chris Knauss emailed Plaintiff regarding concerns raised through Sephora's internal process.

27. Knauss stated he was conducting an investigation into concerns raised at Plaintiff's location and asked Plaintiff to provide availability for a private call.

28. On or about May 30, 2024, Plaintiff was monitored while in the bathroom by a Sephora representative.

29. Plaintiff believed disability was a factor in the May 30, 2024 bathroom monitoring.

30. On or about May 31, 2024, Plaintiff emailed Tristar stating that she had disclosed her disability to her employer, as she had done previously, and needed temporary disability or paid leave because workplace conditions and a workplace incident had caused health problems.

31. On or about May 31, 2024, Plaintiff emailed Andrea Miller stating that Plaintiff would be off work for at least the next week while waiting to hear back from work, that Plaintiff had requested paid leave, and that Plaintiff had emailed April regarding provider correspondence.

32. On or about May 31, 2024, Plaintiff emailed April Robichaud seeking a paid leave of absence.

33. In that email, Plaintiff disclosed disability-related mental-health limitations, including PTSD-related symptoms triggered by workplace conditions.

34. Plaintiff stated that her mental and physical health were being negatively affected, that she was experiencing regression, and that she could not continue working under the conditions described in the email.

35. Plaintiff requested short-term disability and/or paid leave to permit treatment and a return to work, as a temporary and finite accommodation.

36. On or about June 7, 2024, Plaintiff submitted disability accommodation paperwork and requested accommodation for disability-related limitations.

37. Plaintiff's requested accommodations included a finite, treatment-related leave and schedule-related accommodation, including time away from work for PTSD-related treatment and a return to work with restrictions.

38. On or about June 18, 2024, Sephora HR Generalist Nicole Sheehy emailed Plaintiff regarding Plaintiff's accommodations submitted to Tristar.

39. Sheehy stated she had been trying to contact Plaintiff regarding accommodations and asked Plaintiff to provide windows of time to chat.

40. Plaintiff responded that she was awaiting provider input on her return date, that she had not received responses from Sephora, and that she was unable to access Sephora's systems.

41. Tristar informed Plaintiff that the approved period for Plaintiff's leave of absence was scheduled to end on June 17, 2024 and that Plaintiff was expected to return to work on June 18, 2024 or on the next scheduled shift.

42. Tristar further stated that any extension of time was not approved until Plaintiff submitted required supporting certification forms and received approval from Tristar.

43. At the time Plaintiff was expected to return to work, Sephora and/or its leave administrator had notice that Plaintiff had disclosed disability-related limitations and had requested accommodation.

44. At the time Plaintiff attempted to return to work, the accommodation process remained unresolved.

45. On or about June 18, 2024, Plaintiff attempted to return to work from leave.

46. On or about June 18, 2024, Sephora suspended Plaintiff after she attempted to return to work.

47. Sephora's suspension of Plaintiff affected the terms, conditions, and privileges of Plaintiff's employment and functioned as a materially adverse employment action.

48. Plaintiff believed disability and her disability-related accommodation activity were factors in the June 18, 2024 suspension.

49. On or about June 24, 2024, Plaintiff communicated that Sephora HR had told her they were still working on accommodations and that Plaintiff should receive an update on July 1, 2024.

50. On or about July 6, 2024, Plaintiff emailed Steven Tomlin asking for Plaintiff's leave status and next steps.

51. Plaintiff stated she had not received the expected July 1, 2024 update.

52. Plaintiff stated she had stopped by the workplace location that day and spoke with Store Manager Andrea Miller, who stated she was uncertain of Plaintiff's leave status.

53. On or about July 9, 2024, Steven Tomlin stated that HR had not provided him with an update and that he had previously spoken with Plaintiff's Store Manager.

54. On or about July 11, 2024, Tomlin stated that Plaintiff had been released to return to work with restrictions, but that Sephora HR needed to determine whether it could accommodate Plaintiff's restrictions before Plaintiff could return.

55. Plaintiff's release to return to work with restrictions identified a defined set of work restrictions that would have permitted Plaintiff to perform the essential functions of the Sales and Service Leader position.

56. The restrictions were reasonable and could have been accommodated without undue hardship to Sephora.

57. On or about July 21, 2024, Plaintiff again emailed Tomlin seeking an update.

58. On or about July 31, 2024, Sephora denied Plaintiff's requested disability accommodation and did not permit Plaintiff to return to work with restrictions.

59. Sephora did not provide Plaintiff with an effective alternative accommodation.

60. Plaintiff believed disability was a factor in Sephora's failure to accommodate.

61. Sephora's failure to accommodate and refusal to permit Plaintiff to return to work with restrictions caused Plaintiff to lose wages, benefits, and employment opportunities.

62. Plaintiff's employment with Sephora ended on or about October 24, 2024.

63. Plaintiff does not plead the October 24, 2024 separation as a separately exhausted adverse action at this time. Plaintiff pleads the separation as a consequence of Sephora's earlier failure to accommodate, failure to complete the interactive process, suspension, and refusal to permit Plaintiff to return to work with restrictions.

64. As a result of Sephora's conduct, Plaintiff suffered lost wages, lost employment benefits, emotional distress, humiliation, inconvenience, and other damages.

## PLAINTIFF'S DISABILITY

65. Plaintiff has post-traumatic stress disorder (PTSD) and attention-deficit/hyperactivity disorder (ADHD), each of which is a mental impairment.

66. Plaintiff's impairments substantially limit one or more major life activities, including concentrating, thinking, sleeping, communicating, interacting with others, regulating emotions, and working.

67. Plaintiff's impairments also substantially limit the operation of major bodily functions, including neurological and brain function, within the meaning of 42 U.S.C. § 12102(2)(B).

68. Consistent with 42 U.S.C. § 12102(4)(A), the term "substantially limits" is construed broadly in favor of broad coverage and is not a demanding standard.

69. Consistent with 42 U.S.C. § 12102(4)(D), Plaintiff's impairments are a disability even if their symptoms are episodic or in remission, because they would substantially limit a major life activity when active. Plaintiff's PTSD-related symptoms were triggered and intensified by the workplace conditions described above.

70. Consistent with 42 U.S.C. § 12102(4)(E), the determination of whether Plaintiff's impairments substantially limit a major life activity is made without regard to the ameliorative effects of mitigating measures.

71. Plaintiff has a record of the impairments described above.

72. In the alternative, Sephora regarded Plaintiff as having an impairment.

73. Plaintiff's claims for failure to accommodate are based on Plaintiff's actual disability and record of disability.

74. Plaintiff is a qualified individual within the meaning of the ADA and a person with a disability within the meaning of the PDCRA, because she could perform the essential functions of the Sales and Service Leader position, described in Paragraphs 5 and 22, with or without

reasonable accommodation, including with the work restrictions identified in her July 11, 2024 release.

## COUNT I
### FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA
### 42 U.S.C. §§ 12112(a), 12112(b)(5)(A)

75. Plaintiff incorporates the preceding paragraphs.

76. Plaintiff had a disability within the meaning of the ADA, as alleged in Paragraph 65-74.

77. Plaintiff was a qualified individual within the meaning of the ADA because she could perform the essential functions of the Sales and Service Leader position with or without reasonable accommodation, including with the restrictions identified in her July 11, 2024 release.

78. Sephora knew Plaintiff had disability-related limitations.

79. Sephora knew Plaintiff requested accommodation for those limitations.

80. Plaintiff requested reasonable accommodations, including finite, treatment-related leave, schedule-related accommodation, and a return to work with defined restrictions.

81. The return-to-work restrictions identified in Plaintiff's July 11, 2024 release were a reasonable accommodation that would have permitted Plaintiff to perform the essential functions of her position and could have been provided without undue hardship.

82. Sephora communicated with Plaintiff regarding accommodations submitted through Tristar.

83. Sephora knew that Plaintiff's accommodation process was active and unresolved when Plaintiff attempted to return to work.

84. Sephora denied Plaintiff's requested accommodation on or about July 31, 2024 and did not permit Plaintiff to return to work with restrictions.

85. Sephora did not provide Plaintiff with an effective alternative accommodation.

86. Sephora failed to engage in a good-faith interactive process, and that failure prevented the identification and provision of the reasonable accommodation reflected in Plaintiff's July 11, 2024 release.

87. Sephora's failure to accommodate violated the ADA, including 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A).

88. Sephora's conduct caused Plaintiff damages.

## COUNT II
### DISABILITY DISCRIMINATION / DISCRIMINATORY DISCIPLINE IN VIOLATION OF THE ADA  42 U.S.C. §§ 12112(a), 12112(b)(1)

89. Plaintiff incorporates the preceding paragraphs.

90. Plaintiff had a disability within the meaning of the ADA.

91. Plaintiff was qualified for her position, with or without reasonable accommodation.

92. Sephora knew Plaintiff had disclosed disability-related limitations and had requested accommodation.

93. Plaintiff attempted to return to work from leave on or about June 18, 2024.

94. At the time Plaintiff attempted to return, Sephora knew or should have known that Plaintiff's disability accommodation process remained unresolved.

95. Sephora suspended Plaintiff after Plaintiff attempted to return to work.

96. Sephora's suspension of Plaintiff constituted discipline and a materially adverse employment action affecting the terms, conditions, and privileges of employment.

97. Plaintiff's disability was a motivating factor in Sephora's decision to discipline and suspend Plaintiff.

98. Sephora discriminated against Plaintiff in the terms, conditions, and privileges of employment because of disability, in violation of 42 U.S.C. §§ 12112(a) and 12112(b)(1).

99. Sephora's disability discrimination caused Plaintiff damages.

**COUNT III**
**FAILURE TO ACCOMMODATE IN VIOLATION OF THE MICHIGAN**
**PERSONS WITH DISABILITIES CIVIL RIGHTS ACT**
**MCL 37.1102(2); MCL 37.1210**

100. Plaintiff incorporates the preceding paragraphs.

101. Plaintiff had a disability within the meaning of the Michigan Persons with Disabilities Civil Rights Act.

102. Plaintiff's disability was unrelated to Plaintiff's ability to perform the duties of the Sales and Service Leader position with reasonable accommodation.

103. Sephora knew of Plaintiff's disability-related limitations.

104. Plaintiff requested accommodation for disability-related limitations.

105. Plaintiff's requested accommodations included finite, treatment-related leave, schedule-related accommodation, and a return to work with defined restrictions.

106. Sephora denied Plaintiff's requested accommodation and did not permit Plaintiff to return to work with restrictions.

107. Sephora did not provide Plaintiff with an effective alternative accommodation.

108. Sephora failed to reasonably accommodate Plaintiff.

109. Sephora's failure to accommodate violated the PDCRA, including MCL 37.1102(2) and MCL 37.1210.

110. Sephora's conduct caused Plaintiff damages.

**COUNT IV**
**DISABILITY DISCRIMINATION / DISCRIMINATORY DISCIPLINE IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT**
**MCL 37.1202(1)(b)**

111. Plaintiff incorporates the preceding paragraphs.

112. Plaintiff had a disability within the meaning of the PDCRA.

113. Plaintiff's disability was unrelated to Plaintiff's ability to perform the duties of her position with reasonable accommodation.

114. Sephora knew Plaintiff had disclosed disability-related limitations and had requested accommodation.

115. Plaintiff attempted to return to work from leave on or about June 18, 2024.

116. At the time Plaintiff attempted to return, Sephora knew or should have known that Plaintiff's disability accommodation process remained unresolved.

117. Sephora suspended Plaintiff after Plaintiff attempted to return to work.

118. Sephora discriminated against Plaintiff with respect to the terms, conditions, and privileges of employment because of disability.

119. Sephora's conduct violated the PDCRA, including MCL 37.1202(1)(b).

120. Sephora's conduct caused Plaintiff damages.

**COUNT V**
**RETALIATION IN VIOLATION OF THE MICHIGAN PERSONS**
**WITH DISABILITIES CIVIL RIGHTS ACT**
**MCL 37.1602(a)**

121. Plaintiff incorporates the preceding paragraphs.

122. Plaintiff engaged in protected activity by disclosing disability-related limitations, requesting disability accommodation, seeking disability-related leave and accommodation assistance, and participating in the accommodation process.

123. Sephora knew Plaintiff engaged in protected activity.

124. After Plaintiff engaged in protected activity, Sephora suspended Plaintiff, delayed and failed to complete the accommodation process, denied Plaintiff's requested accommodation, and refused to permit Plaintiff to return to work with restrictions.

125. The timing and sequence of events, the unresolved accommodation process, Plaintiff's repeated follow-up, Sephora's lack of response, Plaintiff's blocked system access, and the denial of accommodation support a causal connection between Plaintiff's protected activity and Sephora's adverse actions.

126. Sephora retaliated against Plaintiff for requesting accommodation and asserting disability-related rights.

127. Sephora's retaliation violated the PDCRA, including MCL 37.1602(a).

128. Sephora's retaliation caused Plaintiff damages.

### DAMAGES

129. Plaintiff suffered lost wages, lost benefits, loss of employment opportunities, emotional distress, humiliation, inconvenience, and other compensable damages.

130. Plaintiff is entitled to compensatory damages, equitable relief, attorney fees, costs, interest, and all other relief available by law.

### PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Sephora USA, Inc., and award:

A. Declaratory judgment that Defendant violated Plaintiff's rights;

B. Back pay;

C. Front pay or reinstatement if legally and factually appropriate;

D. Compensatory damages;

E. Emotional-distress damages;

F. Attorney fees and costs;

G. Prejudgment and post-judgment interest;

H. Equitable relief requiring correction of employment records; and

I. Any other relief the Court deems just and proper.

Respectfully Submitted,

*/s/   Robert Anthony Alvarez*

Robert Anthony Alvarez (P66954)
Victor M. Jimenez Jr.  (P85194)
Attorneys for Plaintiff
Avanti Law Group PLLC

## JURY DEMAND

NOW COMES Plaintiff, by and through her attorney, and hereby requests a trial by jury

pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Respectfully Submitted,


*/s/   Robert Anthony Alvarez*             .
Robert Anthony Alvarez (P66954)
Victor M. Jimenez Jr.  (P85194)
Attorneys for Plaintiff
Avanti Law Group PLLC

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

Date: __ 2026-07-08

/s/____ Riley Paige Reeds

Riley Reeds